*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0399**

State of Minnesota,
Respondent,

vs.

Tanya Lee Scheffler,
Appellant.

**Filed October 6, 2014
Affirmed
Rodenberg, Judge**

Meeker County District Court
File No. 47-CR-12-482

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony D. Spector, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Tanya Lee Scheffler challenges her conviction of operating a motor vehicle while under the influence of a controlled substance, after a court trial and after

her petition for postconviction relief was denied by the district court while her direct appeal was stayed. We affirm.

**FACTS**

On November 12, 2011, the Meeker County Sheriff's Office received a report of a vehicle that was "all over the road," traveling into the oncoming lane of traffic, and weaving "from shoulder to shoulder" on the highway. Eden Valley Police Officer Brian Peterka located the vehicle, observed it traveling below the speed limit, crossing the fog line, and "weaving sharply within . . . its lane." Officer Peterka stopped the vehicle at approximately 1:12 a.m. and identified the driver as appellant. Officer Peterka, who had dealt with appellant once before, noticed that her speech was slow, hard to follow, and did not make sense. Officer Peterka also noticed that appellant "acted somewhat erratic" and did not "seem to have her . . . wits about her."

Within ten minutes, Meeker County Deputy Sheriff Reggie Sandstrom arrived at the scene. He did not smell any alcohol on appellant, but noticed that she held onto her vehicle for balance as she exited. Appellant was unsure of her location. Deputy Sandstrom conducted several standardized field sobriety tests, which appellant failed. Based on his observations, Deputy Sandstrom concluded that appellant was under the influence of a controlled substance, placed her under arrest, and transported her to the Meeker County jail.

Deputy Sandstrom testified that appellant was read the implied consent advisory and agreed to submit to a blood test, which was taken at 3:04 a.m. at a nearby hospital. According to a BCA lab report, appellant's blood sample contained Oxycodone

metabolytes, Clonazepam, and a metabolite of marijuana. Appellant had told Deputy Sandstrom that she takes Clonazepam for anxiety, Paroxetine for depression, and Trazodone to help her sleep, but she did not mention taking Oxycodone.

Litchfield Police Officer Dennis Hanson, a certified Drug Recognition Evaluator (DRE) who also testified at trial, was asked to evaluate appellant after the blood draw. Hanson testified that appellant told him that the night before her arrest she had slept from 8 p.m. until 5:30 a.m., and had last eaten at 12:30 p.m. She stated that she had consumed numerous caffeinated beverages, including one that she was drinking when she was stopped at 1:00 a.m. Based on his training, past experience, and DRE evaluation of appellant, Hanson believed that appellant was impaired by a depressant, although Hanson also noted signs and symptoms of narcotic impairment. Evidence of both Oxycodone, a narcotic, and Clonazepam, a depressant, were found in appellant's blood sample. Hanson further testified that to the best of his knowledge, the DRE evaluation and tests are not affected by sleep deprivation. But Hanson could not opine concerning the effect that lack of food for a 12-hour period might have on the evaluation.

Appellant testified at trial that she did not take her full dose of Clonazepam for the day because she was in the process of moving from Litchfield to Paynesville and knew she would be "driving quite frequent[ly]" that day. She testified that she was under a lot of stress and was anxious. She testified that she had "[v]ery little" to eat that day and was drinking caffeinated beverages. She acknowledged that she was driving slower than she should have been and that she focused on the semi in front of her for a while "because [she] knew [that she] was very exhausted." She remembered her vehicle "going off to the

3

right, so it was going towards the right-hand ditch" and she "would feel it hit the gravel on the side of the road" and she would "pull [her]self back up onto the road." She claimed that she "was getting very tired" and "was starting to nod off."

Appellant testified that after she was stopped, "everything kind of seemed to . . . [go in] slow motion, and then it would all just be spinning really fast." She claimed that she did not have a clear memory of what took place from the time she was pulled over "[u]ntil [she] woke up in the holding cell and they told [her that she] could leave." She testified that she remembered going to the hospital and that she "was in tears crying" and that "[t]hey had to puncture [her] arm more than once to get blood." She testified that she was "so tired [she] could not function, and all [she] could do was laugh" not because the situation was funny, but because, as she described it, she "just could not believe [she] was so close to getting away from such a horrible place in [her] life, and [she] was stopped just before [she] got back to [her] children." She claimed that she "had been having an anxiety attack for most of the day."

Appellant further testified that she is a recovering addict who had relapsed several days before her arrest. She admitted that the bottle for her Clonazepam contains a warning to "use care and caution when operating machinery" and that it "may cause drowsiness" (quotation marks omitted). Appellant agreed that Clonazepam can affect a person's ability to drive a vehicle and that the warning explicitly cautions about taking the medication "when driving cars" (quotation marks omitted). Despite its presence in her blood, appellant denied having taken Oxycodone.

4

The district court found appellant guilty of operating a motor vehicle under the influence of a controlled substance, in violation of Minn. Stat. § 169A.20, subd. 1(2) (2012), and operating a motor vehicle when the body contains any amount of a schedule I or II controlled substance, in violation of Minn. Stat. § 169A.20, subd. 1(7) (2012).  The district court later denied several posttrial motions filed by appellant, entered findings to support the verdict, adjudicated appellant guilty of both counts, and imposed sentence.[1]

Appellant filed a direct appeal and this court granted appellant's motion to stay and remand to allow appellant to challenge the validity of the warrantless blood draw following *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).  In an order filed on December 17, 2013, the district court denied the petition and rejected appellant's claim that she is entitled to an evidentiary hearing on whether she withdrew her consent:

> Petitioner's argument that officers Sandstrom and Hansen failed to give enough "detailed testimony" surrounding her decision to consent to a blood draw is just that:  argument. There are insufficient facts to entitle her to relief.  Petitioner provides no additional facts to show that she withdrew her consent at the hospital.  There is no evidence at all of withdrawn consent.  Petitioner's own testimony never raised issues of withdrawing consent and her demeanor after the blood draw did not indicate that she withdrew or was upset about the blood test.  All she said is it took two attempts to obtain a sample, and that it hurt.  That some pain is associated with a blood draw must have been in the minds of every court that has addressed the issues presented in *McNeely*, including

---

[1] Appellant did not raise, and the parties' briefing does not discuss, the impact or propriety of multiple convictions arising from the same incident.  We note that a person may be convicted of either the crime charged or an included offense, but not both.  Minn. Stat. § 609.04, subd. 1 (2012).  Because the issue was not raised by the briefing, we merely note it in passing.

the *Brooks* court. Petitioner argues that the toxicology reports should be excluded under *McNeely* and *Brooks*; however, *McNeely* and *Brooks* only apply to unconsented-to blood draws. Since Petitioner consented to this blood draw and never communicated withdrawal of consent, law enforcement does not need to seek a separate warrant. *McNeely* and *Brooks* are not availing to Petitioner here.

On December 30, 2013, appellant moved for reconsideration in the district court. Appellant's counsel submitted a letter to the district court in which she explained that before the district court's December 17 order, appellant "produced the enclosed affidavit outlining the facts around [her] withdrawn consent." The affidavit restates some of the facts outlined in appellant's trial testimony, and also includes the following additional allegations: "I remember someone tied my arms to the chair with straps"; "I remember I said, 'Stop!'"; "I remember I told the nurse and police officer to stop because being tied to the chair triggered an anxiety attack"; and "I do not believe that I willingly provided the blood sample at the hospital."

In an order filed on January 10, 2014, the district court denied appellant's motion for reconsideration. The district court concluded that the affidavit was untimely and should have been included with the relevant materials filed earlier with the court. The district court further concluded that, even if it considered the affidavit, appellant would not be entitled to relief. Appellant also appealed the denial of her postconviction petition.

We thereafter dissolved the stay and reinstated the direct appeal, consolidating it with appellant's postconviction appeal.

# DECISION

## I.

Appellant argues that the district court erred in denying her postconviction petition without an evidentiary hearing. We review the denial of postconviction relief for an abuse of discretion. *Sontoya v. State*, 829 N.W.2d 602, 603 (Minn. 2013). A district court need not hold an evidentiary hearing regarding allegations made in a petition when those allegations are contrary to trial testimony and the district court is not "reasonably well-satisfied" that the trial testimony was false. *McDonough v. State*, 827 N.W.2d 423, 426-27 (Minn. 2013).

Based on the testimony at trial, including appellant's testimony, the district court concluded that appellant voluntarily consented to the blood draw and that the seizure of her blood was therefore constitutionally permissible despite the absence of a search warrant authorizing the seizure. For the consent exception to the warrant requirement to apply, the state must show by a preponderance of the evidence that a driver "freely and voluntarily" consented to the search. *Brooks*, 838 N.W.2d at 568. To determine whether consent was voluntary, a district court must examine the totality of the circumstances, including "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Dezsos*, 512 N.W.2d 877, 880 (Minn. 1994). The nature of the encounter includes how police came to suspect the driver was under the influence, whether police read the driver the implied consent advisory, and whether the driver was given an opportunity to consult with an attorney. *Brooks*, 838 N.W.2d at 569.

Whether a person has voluntarily consented is a factual question, which we review for clear error. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

In this case, the consent issue was raised and considered by the district court in postconviction proceedings. The district court had already heard and considered appellant's testimony at the court trial. The district court found that appellant was read the implied consent advisory, answered "No" when asked if she wanted to speak to an attorney, and agreed to submit to a blood test. The district court further found that appellant could not remember all of the events on the night in question but that she did recall being in the hospital and crying because the nurse had to poke her twice to get a good sample. The district court found that following the blood draw, and during her interview with DRE Officer Hanson, appellant was asked how the blood draw went and responded that she was "being helpful" and tried to help them "find the ones that don't run," and then she laughed. The district court concluded that there was no evidence that appellant withdrew her consent at the hospital, that her own trial testimony raised no issues of withdrawing consent, and that her demeanor after the blood draw did not indicate that she was upset about the test. It concluded that, because appellant "consented to this blood draw and never communicated withdrawal of consent," a warrant was not required.

In *Brooks*, the Minnesota Supreme Court concluded that nothing in the record suggested that the defendant was "coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." 838 N.W.2d at 571 (quotation omitted). The *Brooks* court identified some circumstances that might suggest

8

coercion, including when a suspect is "confronted with repeated police questioning" or "asked to consent after having spent days in custody." *Id.* Here, appellant's supplemental allegations, even if believed, suggest that "being tied to the chair" triggered an anxiety attack. But she did not claim to have revoked her earlier consent to the blood draw, nor even to have had any second thoughts about that consent. And as noted by the district court, which had heard her trial testimony and that of the police officers, appellant's conduct and interactions with the DRE officer after the blood draw showed that any anxiety attack she may have had was fleeting. By the time she returned to the jail, appellant stated that she tried to be "helpful" during the blood draw and assist the nurse, and she was laughing and apparently in good spirits.

Because the evidence clearly supports the district court's findings and conclusions that appellant freely and voluntarily consented to submit to a blood test and that her consent was not "coerced" or withdrawn, the district court acted within its discretion in denying the postconviction petition without an evidentiary hearing.

**II.**

Appellant argues that the evidence is insufficient to prove that she was driving while impaired because her demeanor and physical movements, which formed the basis for the officers' opinions that she was impaired, were caused by her anxiety, lack of food, and sleep deprivation. On appeal, we view the evidence in the light most favorable to the verdict. *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999). We assume that the fact-finder "believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

Appellant asserts that without the BCA lab report showing the presence of controlled substances or Schedule I or II drugs in her system, the only admissible evidence that she was operating her vehicle under the influence of drugs or that her body contained a Schedule I or II drug was the opinion of the DRE officer that appellant was under the influence of a depressant and possibly a narcotic. Opinion testimony by a drug recognition expert that a person is impaired may not be sufficient, without more, to support a guilty verdict. *See State v. Klawitter*, 518 N.W.2d 577, 586 (Minn. 1994) (Wahl, J., dissenting).

The DRE officer's testimony, however, was not the only evidence of impairment presented at trial. Appellant's driving conduct caused another driver to call law enforcement to report it. And Officer Peterka followed appellant and observed additional evidence of impaired driving, including driving too slow, crossing the fog line, and weaving. Once stopped, appellant failed field sobriety tests, had difficulty walking and balancing, exhibited slow speech, and could not remember where she was. The officers, all experienced in identifying impaired drivers, believed that appellant was impaired by more than anxiety, fatigue, and lack of food. The district court weighed all of the evidence presented, including appellant's claims that she was impaired by factors other than a controlled substance, and determined that she was guilty of operating a motor vehicle while under the influence of a controlled substance. The evidence is more than sufficient to sustain the conviction here.

**Affirmed.**

10